NATHANIEL DOUGLAS *et al.*

*v.*

CASPAR PFEIFFER *et al.*

1.  PROOF OF PAYMENT.   In a suit to remove a cloud from the title to certain real estate, occasioned by a trust deed given to secure a note for $800.00, the defendant filed a cross-bill and produced the trust deed and note, alleging that the same had never been paid, and praying the trustee be decreed to sell the premises to satisfy the same.   Upon the single question presented, whether the said note had been paid, the proof being conflicting: *Held,* that the complainant in the cross bill, made out a *prima facie* case, by the production of the trust deed and note, and that the burden of overcoming the same by proof of payment, devolved on the defendants in the cross bill, which proof must preponderate to establish this defence of payment.

APPEAL from the Circuit Court of Cook county ; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

This was a bill in chancery filed in the Circuit Court of Cook county, by the appellees, Caspar Pfeiffer, trustee, etc., Catherine Weber and John C. Weber, against the appellants, Nathaniel Douglas, George T. De Roe and John V. Le Moyne, to remove a cloud from the title to certain real estate, occasioned by a trust deed given to secure the payment of a certain note for the sum of $800.00, payable to said George T. De Roe, said Le Moyne being named as trustee in said deed. The defendants filed a cross-bill, alleging payment of the note, and praying that the trustee be decreed to sell the premises. The court decreed a satisfaction of the deed of trust, to reverse which decree, the case is brought to this court. The sole question presented by the record is—whether the note, to secure the payment of which the trust deed was given, has been paid. The facts in the case are stated in the opinion.

Mr. J. V. LE MOYNE, for the appellants.

Messrs. LULL & ATWOOD, for the appellees.

Mr. JUSTICE LAWRENCE delivered the opinion of the court:

In October, 1856, Pfeiffer, the appellee herein, borrowed of one Benson, then doing a banking business in Chicago, the sum of $1,850, and left on deposit with him $800, with which to pay a debt secured by deed of trust on the same property upon which security was given for the new loan. The note for $800 was payable to one George T. De Roe, and J. V. Le Moyne was the trustee in the deed of trust. Benson placed the money on his books to the credit of Le Moyne, and notified him of that fact; but, being only trustee for the sale of the property, the latter declined to receive it. In June, 1857, George T. De Roe came to Chicago, and was then apprised of what had been done, and Benson proffered to pay the note, if he would surrender it and cause the deed of trust to be

104     Douglas *et al. v.* Pfeiffer *et al.*     [Sept. T.

Opinion of the Court.

released. De Roe, however, did not have the note with him. He remained in Chicago but a few days, and while there bought of Benson a $1,100 note on one McDermon, and Benson gave him, as collateral to that, his own note for $1,000. Benson, in giving his testimony in this case, states as his impression, that he only received $337 from De Roe, and that the $800 note was in some way settled in the transaction, but he states his recollection to be indistinct. The note had in fact been assigned to Stephen De Roe. He died in the State of New York in 1860, leaving a will, in which Nathaniel Douglas, the appellant, was named executor. This bill was filed by the owners of the property covered by the deed of trust, to procure a decree declaring the debt paid, and removing the incumbrance. Douglas, as executor of Stephen De Roe, filed a cross-bill, praying that the trustee be decreed to sell. The question presented by the record is, whether the $800 was ever in fact paid: The Circuit Court decreed a satisfaction of the deed of trust, and we should have no hesitation in affirming the decree, but for a piece of evidence to which we have not yet alluded.

The complainants examined Benson as a witness, and, on the cross-examination, he was shown by defendants' counsel the following instrument, a copy of which was filed as an exhibit to the cross-bill, and the original executed and delivered by Benson to George T. De Roe, while the latter was in Chicago in June, 1857. Benson testified that the instrument was written and signed by him. It is as follows:

"F. H. Benson & Co's. Banking and Exchange Office, ⎫
   No. 46 Clark Street, Chicago, June 4th, 1857. ⎬

$800.         ·         Chicago, February 20th, 1855.

Eight months after date I promise to pay to the order of G. T. De Roe eight hundred dollars, without defalcation, for money borrowed.
     (Signed)           RUD. PFEIFFER.

The above is against one Rudolph Pfeiffer, a butcher who resides in North Chicago, and is secured by trust deed of same date, with note, which is duly recorded. Said note was transferred. (I understood to Stephen De Roe, Esq.) Eight hundred dollars was deposited by R. Pfeiffer with me on the 20th day of October, 1856, to pay the above note on presentation with the proper release deed to said Pfeiffer's property, and I do hereby hold myself in readiness to pay the same when the requirements of R. Pfeiffer for release deed are presented with the note. I have also this day received for collection, of G. T. De Roe two notes, for $100, dated May 23d, 1856, payable ninety days after date to J. W. Roonty, interest paid on same to June 1st, 1857; the other note for $103 due June 14th, 1857—both notes being signed by Rudolph Pfeiffer. All charges by me for collection made for De Roe and other services have been paid up to this date.

F. H. BENSON."

We have tried in vain to reconcile this instrument with the theory that the eight hundred dollar note was paid in any transaction that occurred at that time between Benson and De Roe. By this instrument, Benson expressly acknowledges the money to be in his hands, and that he is ready to pay it over as soon as the property can be released from the deed of trust, in satisfaction of the requirements of Pfeiffer. This instrument bears date on the 4th of June. On the 6th of June he sold to De Roe the $1,100 note. If, in doing so, he paid the $800 for which he had made himself personally liable only two days before by an instrument written by his own hand, how was it that he, a business man and a banker, did not take up and destroy this paper? But more than this, how did it happen that he paid this $800 without procuring a release of the deed of trust, when the instrument of the 4th shows that his obligations to Pfeiffer in that respect were not forgotten, and that the debt was not to be paid until the land was released? And if the debt was paid, why did not the parties

cause a deed of release to be at once executed by Le Moyne, the trustee, who was a resident of Chicago? And how did it happen that Benson, if the money was paid, did not balance on his books the $800 which stood there to the credit of Le Moyne, instead of allowing it to continue there until his assignment? And, finally, how did it happen that Benson, a banker, should have ventured to pay $800 to George T. De Roe without delivery of the note, when the instrument of the 4th of June, written by Benson himself, recites that this note had been transferred, as he understood, to Stephen De Roe? These questions it is impossible to answer in any satisfactory manner, without ignoring all our experience of the practical affairs of life.

In deciding this case, it is to be remembered that the complainant in the cross-bill makes out a *prima facie* case, by producing the note and deed of trust. The burden of overcoming this *prima facie* case, by proof of payment, devolves on the defendants in the cross-bill. Unless the proof on this point preponderates in their favor, their defence is not made out. Their proof consists, in the evidence of Benson, in the fact that when he became insolvent and made an assignment, he did not schedule this debt, and the further fact, that the note was allowed to lie so long without any efforts for its collection. But Benson, in his evidence, is careful to say, that he gives but his impressions, and that his recollection is not positive, but indistinct. His indistinct recollections, and the other circumstances upon which the counsel for appellee has dwelt in his argument, if there were no other evidence, would probably justify us in presuming payment, though the proof even then would be meagre. But the vague memories of Benson, whose integrity as a witness we do not at all impeach, are met by this written instrument of the 4th of June, which utters no uncertain sounds. Of this instrument Benson offers no explanation. He leaves it to tell its own story, and the inference from its language is, in our opinion,

irresistible that this note was not paid in June, 1856. We have carefully weighed the evidence and arguments in this case, and are compelled to the conclusion that the decree must be reversed. The cause will be remanded for further proceedings.

*Decree reversed.*